Marvin, J.
In the case of Julis Strasser against the Union Club of Cleveland, suit was brought by Strasser in the court of common pleas against the Union Club,which is a corporation,for the purpose of recovering damages for personal injury which Strasser sustained on the 27th of December, 1897, while he was an employe of the club. The facts which are *222 undisputed are, that for some four or five years Strasser has been employed as a porter and to do other work about the club house of the Union Club; a part of his duties was to carry supplies from the basement to the second and third floors of the club building; those supplies usually were carried on an elevator, or dumb-waiter, they being placed upon the dumb-waiter or elevator in the basement and carried up to the second floor if they belonged on that floor. — ■ the dining room was on that floor — nr carried to the third floor if the supplies belonged there, where the kitchen was on the third floor. Among other things, it was his duty to carry coal to the kitchen.
The immediate superior of Strasser was a second steward of the club, Henry Grimm.
This elevator was not an ordinary passenger elevator at all; it has a platform — indeed, it is but a platform, and comes up through a shaft; there are no doors or gates provided to protect those who may be upon the floors where there are openings into the elevator shaft. On the second floor of the club house, the passage-way from the pantry to the elevator is only four or four and a half feet high, very narrow and very dark.
This accident happened at about eight o’clock in the evening, the 27th of December. Strasser and Grimm, the second steward, were in the basement. They placed upon the elevator some coal which was to go to the third story, and several cases of wine which were to be taken off at the secoud story. Then Grimm, the second steward, went to .the third story, walking up the stairs; the plaintiff remained in the basement, and the two, the plaintiff in the basement and Grimm on the third floor, pulled on the ropes or cords by which the elevator was caused to rise. These goods were on the elevator. They drew the elevator up so that the platform was about two feet below the second story floor of the building. The reason it was not drawn up to the level was because the passage-way to the pantry in which these wines were to be placed, was low, and the goods were piled up to a considerable height,or more than four and a half feet, and in order that they might reach the goods and not have them interfered with by overhead ceiling or *223 wall, they left the elevator some two feet below the level of the floor, Then the top of the goods was not highér than the ceiling of this passage-way where they were to be taken out, Having removed the wines at the second floor — 'and the plaintiff and .Grimm both took part in the removal of these wines — Strasser, the plaintiff, placed them in some order in the pantry which was some seven or eight feet back from where the opening from the passageway was into the elevator shaft — the coal remaining upon the platform of the elevator after they had the wines removed. Strasser having completed his work of placing the wines in order in the pantry, went backward along this passage-way, and he had to bend over to do it, the passageway being only four or four and a half feet high and it being dark. He went back to the elevator shaft, reached out with his foot to find the platform which had been left by himself and Grimm some two feet lower, lost his balance and fell over into the elevator shaft. As a matter of fact, that elevator had been, by Grimm, run to the third floor, so that there was nothing to stop the fall of Strasser until he struck the basement floor some thirty feet below; and he was injured,
The petition sets out the dark condition of the passageway leading from the pantry to the elevator shaft; the want of light and the like, and then concludes by saying that the negligence of the defendant consisted in not providing said elevator with'gates or doors or other appliances, which working either automatically or by hand, would shut off access to the elevator shaft when the elevator had left the second floor; and in not providing said elevator shaft, or said hall-way leading to the elevator shaft on the second floor, with a light to illumine the said shaft or hall-way at night; and in not providing said elevator with.a bell, signal, or other appliance to be used to indicate that the elevator was removed or was being removed from the second floor; and in not adopting a rule requiring the person operating or setting the said elevator in motion, to give a signal or warning thereof; and in moving said elevator from the second floor to the third floor without notifying or warning the plaintiff that said elevator had been or .was being moved from where he had left it at rest.
*224 The answer avers that so far as the darkness of this passage-way or hall-way was concerned, the failure to provide any gates or doors or other appliance to keep people from going into the elevator shaft when there was no platform there, and the want of any rule as to the operation of the elevator, and the want of signals to indicate when the elevator was removed — were all well known to this plaintiff who had been in the employ of the club for four or five years,
No reply is filed to that, and no claim was made on the trial that this was not true.
It is complained of on the part of the plaintiff here who was the plaintiff below, that the court erred in a statement or a ruling made at the very outset of the trial. A witness, John Kerg, was placed on the stand by the plaintiff, and this question was put to him, “State your name?’’ And thereupon the defendant objected to the introduction of any evidence under the petition. The court overruled that objection, holding that the petition states a cause of action, but that the only charge of negligence" contained in the petition was the moving of the elevator from the second floor to the third floor by the second steward without notifying or warning the plaintiff that the elevator had been or was moving from where the plaintiff had left it at rest.
It is said that the court erred in this. Whether this question is so raised that if there were an error, it could be taken advantage of, it is not necessary to say. It seems that the proper thing would have been to have asked some questions and got some rulings. We think, however, the court stated the only issue the plaintiff could make under these pleadings.
We think the only issue that was to be tried so far as any negligence on the part of the defendant was concerned, was whether it was negligent in moving that elevator without notifying the plaintiff, The evidence established that a notice was posted on the elevator, or at the sides, where it could be seen plainly, and in these words: “All persons forbidden to ride on this elevator,’’
Grimm, the second steward, who was the immediáte superior of the plaintiff and who was put upon the stand by the plaintiff, testified that he had himself ridden with the *225 plaintiff, and he had seen the plaintiff alone ride down on the elevator after th,e notice was posted.
The purpose on the part of the plaintiff was to show that notwithstanding such notice was posted, it was habitually violated to the knowledge of the defendant or its foreman.
The question was asked ofGrimm, as appears on the 35th page of the bill of exceptions, whether there was any instruction not to ride on that elevator other than that that was pasted or tacked on the elevator itself. The witness testified in reply, that he did not -remember that he had ever communicated to the plaintiff any instructions that he should not ride on the elevator, Then he was permitted to answer a question as to what orders, if any, he had ever had from the managers of the club not to allow anybody to ride on the elevator, and the question was objected to. He was permitted to answer, that the managers of the club had told him he must not let the men ride there. That was answered ever the objection of the plaintiff, but on the theory that the plaintiff was trying this case; that, notwithstanding there was a notice forbidding riding in this elevator, still it was habitually violated with the knowledge of the club, it is not clear that any error to the prejudice of the plaintiff resulted from that ruling.
Later, the plaintiff himself was upon the stand. It should be said that the second steward Grimm while upon the stand, testified that notwithstanding he had seen Strasser ride down on the elevator after that notice was put up, and had himself ridden down with him, that he had not seen him ride up on the elevator — and there was evidence as to the relative weight of the elevator and the counterweight, affecting the question whether a man might ride up better than down, Then Strasser was himself upon the stand, and this question was asked: “What was your practice during all the time that you were employed there with regard to riding up or down on the elevator?” To this question, objection was made; that objection was sustained; an exception was taken, and the plaintiff's counsel stated that he expected to show that it was customary for the plaintiff to ride up and down on the elevator, sometimes when loaded and sometimes wh$n empty, and that his foreman knew of it, It seems to us that the court should have permitted that question to be answered.
*226 One of the defenses upon which the club was relying in this case, was that Strasser was negligent; that he was negligent in that he violated a rule of the company — of the-club. His claim was that they did not have any rule that anybody was bound by; and, of course, the theory was, that since the coal was to be carried up, not down — ■ the theory, the claim on the part of the plaintiff was, that Grimm, the foreman, should have understood that when that wine was properly taken care of on the second floor, the plaintiff would ride up to the third floor with the coal.
Indeed, counsel for the defendant below, and the court, seemed to recognize that it was an issue as to whether there was a rule which would forbid Strasser from riding upon this elevator, and one that was adhered to or was so often disregarded,' so habitually disregarded, that he was not bound by it. Perhaps I ought not to have said that the counsel for the defendant recognized that. Counsel for the defendant requested this charge to be given, and with a qualification, it was given. The request was made by the defendant:
“It appearing in the evidence that it was not necessary for the plaintiff, in carrying out the orders he claims to have received from Grimm, to get upon' the elevator, and that it was not his custom or that of the other employes to get upon the elevator while hoisting goods theron, no negligence is to be attributed to Grimm in moving the elevator from the second to the third floor notwithstanding the orders which he had previously given to the plaintiff. ”
And the court gave that with a qualification, in this language:
“If it should appear from®the evidence that it was not necessary for the plaintiff in carrying out the orders he claims to have received from Grimm, to get upon the elevator, and that it was not his custom or that of other employes to get upon the elevator - while hoisting goods thereon, no negligence is to be attributed to Grimm in moving the elevator from the second to the third floor notwithstanding the orders which he had previously given to the plaintiff.”
Everybody seemed to recognize that it was a matter of some importance whether this rule, this notice, was habitually violated. The plaintiff offered to show it was. The court refused to let him show it. That was error.
*227 We quote from Wood’s Landlord and Tenant, section 528:
“The old cases upon this subject leant to consider as realty whatever was annexed to the freehold by the occupier. But in modern times the leaning has always been the other way — In favor of the tenant — In support of the interests of trade, which has become the pillar of state, What tenant will lay out his money in costly improvements of the land if he must leave everything behind him which can be said to be annexed to it? Shall it be said that the great gardners and nursery-men in the neighborhood of cities and towns, who expend thousands of pounds in the erection of greenhouses, hot-houses,etc.,are obliged to leave all these things upon the premises, when it is notorious that they are even permitted to remove trees, or such as are likely to become such, by the thousands, in the necessary course of their trade? If it were otherwise, the very object of their holding would be defeated, etc.”
Van Ness v. Packard, 2 Peters (U, S.), page 137, is a case where one leased premises for dairy purposes for a term of years. He erected thereon for the prosecution of his’business,a frame dwelling house, with a cellar and stone or brick foundation. Prior to the expiration of his lease he tore down the building and converted the material to his own use, and the landlord sued as for waste, Justice Story delivered the opinion of the court, affirming the tenant’s right to remove the buildings at any time before thé expiration of his term,and adopted the doctrine of Elvers v. Maw, 2 Smith’s Leading Cases, 153. The court further said:
“It has been suggested at the bar, that the exception in favor of trade has never been applied to cases like that before the court, where a large house has been built, and used in part as a family residence. But the question, whether removable or not, does not depend upon the form of size of the building, whether it has a brick foundation or not, or is of one or two stories high, or has a brick or other chimney. The sole question is whether it was designed for the purposes of trade or not.”
When we keep in mind the thousands of dollars which oil and gas tenants invest in the tubing, drivepipe and cas *228 ing necessary to drill and operate wells,many of which produce nothing to renumerate them, it is not difficult to apply the principles of these and many other authorities that might be cited,
Jason Blackford, for Plaintiffs.
Ross & Kinder, for Defendants.
We consider these articles trade fixtures and governed by rules pertaining to that class of property, and they may be removed before the lease has expired,
The plaintiffs are not entitled to an injunction, and their petition is dismissed at their costs.